IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TREVOR D. STEWART, TODD PHILLIPS, JOE PHILLIPS, H. DELL LEFEVRE, WORTH W. BROWN, JAMES N. BROWN, WILLIAM F. ALLEMAN, as individuals; BOARD OF COUNTY COMMISSIONERS OF KANE COUNTY, UTAH, a political subdivision of the State of Utah; RAY SPENCER, MARK HABBESHAW, DANIEL HULET, in their official capacities as members of the Board of Kane County, Utah; BOARD OF COUNTY COMMISSIONERS OF GARFIELD COUNTY, UTAH, a political subdivision of the State of Utah; D. MALOY DODDS, H. DELL LEFEVRE, CLARE RAMSAY, in their official capacities as members of the Board of County Commissioners of Garfield County, Utah;<br><br>                   Plaintiffs,<br><br>    vs.<br><br>GALE A. NORTON, in her official capacity as Secretary of the United States Department of the Interior; THE DEPARTMENT OF THE INTERIOR OF THE UNITED STATES; THE BUREAU OF LAND MANAGEMENT, an agency of the Department of the Interior of the United States; DAVID HUNSAKER, manager, Grand Staircase Escalante National Monument;<br><br>                   Defendants. | ORDER & MEMORANDUM DECISION<br><br><br><br><br><br>Case No. 2:06 CV 209 |

Plaintiffs filed this lawsuit under the Administrative Procedures Act alleging that the Bureau of Land Management improperly denied certain applications seeking permits to engage in grazing activity on land located within the Grand Staircase National Monument. The BLM justified the denial of the applications by asserting that another permitee, Canyonlands Grazing Corporation, already held permits that encompassed the grazing rights sought by the applicants.

The applicants appealed the BLM's decision, arguing that Canyonlands is a conservation organization that obtained its grazing permits in an attempt to prevent others from using the land for grazing purposes and that Canyonlands is therefore not a valid grazing permitee. Plaintiffs Kane County and Garfield County (the "Counties") successfully sought to intervene and participate in the appeal. An administrative law judge heard the appeal and upheld the BLM's decision to deny the applications. Following that determination, both the applicants and the Counties filed this action.

Plaintiffs contend that the decision of the ALJ is not supported by substantial evidence and request the revocation of Canyonlands's grazing permits and a reconsideration of the applications that the BLM previously denied. The Counties also assert claims against the BLM under the Freedom of Information Act.

Currently pending are the government's request to dismiss the Counties and certain applicants for lack of standing and a request to sever the Counties' FOIA claims from those claims involving the denial of the grazing permits. Additionally, the government requests that the court strike two affidavits submitted by Plaintiffs in opposition to the government's motion to dismiss for lack of standing. Because the Counties cannot satisfy the requirements of standing, the court grants the government's request that the Counties be dismissed as plaintiffs. Further, the court dismisses as plaintiffs the following applicants: Worth Brown, James Brown, and

William Alleman. Plaintiffs are given leave to amend their complaint to sufficiently allege that the Browns and Mr. Alleman have been injured by a final agency action and may properly participate as plaintiffs in this matter. Finally, based on the stipulation of the parties, the court grants the government's motion to sever the Counties' FOIA claims.

## Background

The BLM issued Canyonlands grazing permits that allowed it to graze livestock on the Clark Bench, Last Chance, and Big Bowns Bench allotments, which are located on BLM-administered public lands within the Grand Staircase Escalante National Monument. Plaintiffs Trevor D. Stewart, Wayne Phillips, Mr. Alleman, and the Browns also submitted applications for grazing permits on the three allotments. In addition, Dell LeFevre submitted an application for a grazing permit covering a portion of the Last Chance allotment.

The BLM issued three proposed decisions addressing the applications submitted by Mr. Stewart, Mr. LeFevre, and Mr. Phillips. The proposed decisions denied the applicants grazing permits because Canyonlands already held grazing permits on the allotments in question and there was no additional forage that could be allocated to the applicants. Mr. Stewart, Mr. LeFevre, and Mr. Phillips timely appealed the BLM's decisions to the Office of Hearings and Appeals.

Administrative Law Judge James Heffernan heard the appeals. During the proceedings, Judge Heffernan allowed Mr. Alleman and the Browns to intervene. The intervention was apparently premised on the fact that, although the BLM had not yet acted on the grazing applications submitted by the Browns and Mr. Alleman, the fate of those applications was tied to the resolution of whether the denial of the applications of Mr. Stewart, Mr. LeFevre, and Mr. Phillips was proper. Additionally, Judge Heffernan allowed the Counties to intervene in the

proceedings. Judge Heffernan affirmed the decision of the BLM to deny the grazing permits. This action followed.

## Analysis

Now before the court are the government's request to dismiss the Counties, Mr. Alleman and the Browns as plaintiffs. The government contends that each of those parties lack standing in this matter. The government also requests that the court strike certain affidavits submitted by the Counties in opposition to the government's motion to dismiss for lack of standing. Finally, the government requests that the court sever the Counties' FOIA claims from the claims directly involving the denial of the grazing permits.

**I. Motion to Dismiss for Lack of Standing**

*A.     The Counties*

To establish standing, a party must show that "(1) they have personally suffered an injury in fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision." Mount Evans Co. v. Madigan, 14 F.3d 1444, 1450 (10h Cir. 1994). "Plaintiff's carry the burden of establishing the elements of standing." Id.   "[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." Allen v. Wright, 468 U.S. 737, 752 (1984). "At the pleading stage, general factual allegation of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." Albuquerque v. U.S. Dep't of the Interior, 379 F.3d 901, 912 (10th Cir. 2004) (internal quotation omitted).

The government argues that the Counties lack standing to contest the denial of the applications for grazing permits because the Counties have failed to allege that they suffered an injury in fact as a result of the BLM's action.  Further, the government asserts that even if the Counties did suffer an injury, there is no nexus between the BLM's decision and the injury claimed by the Counties.  Finally, the government contends that, even if the grazing permits were improperly denied, requiring the BLM to reconsider the applications will not redress any injury claimed by the Counties.  The Counties respond that: (1) there is no need to analyze their standing because other plaintiffs unquestionably do have standing, and (2) the Counties have sufficiently alleged that the BLM's decision caused an injury in fact and that a favorable decision in this case will redress that injury.

   1.   *Standing of Other Plaintiffs*

There is case authority for the proposition that courts need not assess the standing of one plaintiff so long as another plaintiff satisfies the standing requirement.  See Utah Ass'n of Counties v. Bush, 455 F.3d 1094, 1098 (10th Cir. 2006) (stating that judicial economy may be best served by declining to address standing of individual parties where the standing of one party is established).  But the decision to forego a standing analysis in such a situation is discretionary with the court.  See Iyengar v. Barnhart, 233 F. Supp. 2d 5, 11 (D. D.C. 2002) ("It is well-settled that if a single plaintiff has standing to sue, the court may proceed to the merits without passing on the standing of the other individual plaintiffs." (emphasis added) (citing Animal Legal Def. Fund, Inc. v. Glickman, 154 F.3d 426, 429 (D.C. Cir. 1998) (en banc))).

For example, in Mount Evans, the Tenth Circuit chose to separately analyze whether a Colorado county and two corporations had standing to challenge a United States Forest Service decision to not rebuild a facility after it was destroyed in a fire.  14 F.3d at 1448, 1451.  The

court concluded that the county had standing, but that the corporations did not. Id. at 1451, 1453. The Tenth Circuit conducted the separate standing analyses even though it also cited Watt v. Energy Action Educ. Found., 454 U.S. 151, 160 (1981) for the proposition that "court[s] should proceed to [the] merits when one plaintiff has standing even if others do not." Mount Evans, 14 F.3d at 1453. Cf. Iowa v. Block, 771 F.2d 347, 352 & n. 5 (8th Cir. 1985) (assessing standing of state plaintiff even though individual farmers had standing).

In Bush, the Tenth Circuit analyzed whether a certain plaintiff had standing to sue even though the district court declined to perform such an analysis. 455 F.3d at 1098. Specifically, the district court declined to analyze whether a plaintiff, Mountain States Legal Foundation ("MSLF"), had standing because the federal government conceded that the other plaintiff in the action, the Utah Association of Counties, did have standing. Id. The district court, noting that the burden to establish standing during the early stages of litigation is relatively light and "recognizing that many of the claims of UAC and MSLF [were] identical or similar," elected, "in the interests of judicial economy" to forego an analysis of MSLF's standing. Id.

Here, judicial economy is best served by analyzing the standing of the Counties. As Bush illustrates, questions surrounding the standing of a plaintiff can haunt proceedings as litigation unfolds. But, more importantly, the participation of the Counties in this action could significantly complicate the resolution of the core issue of this case: whether the BLM properly denied certain individuals grazing permits. While the Counties, like the individual plaintiffs, claim that they have suffered injury as a result of the BLM's denial of those permits, the type of harm alleged by the Counties is considerably different from that of the individual plaintiffs. The discretionary ability of the court to forego analyzing the standing of each plaintiff so long as one

plaintiff satisfies standing requirements makes sense in many situations.  But here, judicial efficiency counsels in favor of addressing the standing of the Counties now rather than later.

    *2.    The Standing of the Counties*

To satisfy the first element of standing, the Counties must allege that they "have suffered an 'injury in fact' that is 'concrete' rather than 'conjectural or hypothetical.'" Opala v. Watt, 454 F.3d 1154, 1156 (10th Cir. 2006) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

The Counties concede that their claimed injury cannot flow from a parens patrie interest in the outcome of the litigation.  "At common law, the concept of parens patrie invested the English Sovereign with powers and duties . . . to protect certain interests of his subjects.  In this country, the parens patrie function expanded somewhat and developed upon states that, to some extent, ceded it to the federal government." In re Multidistrict Vehicle Air Pollution M.D.I. No. 31 v. Auto Mfr. Ass'n, Inc., 481 F.2d 122, 131 (9th Cir. 1973).  "Generally, a State does not have standing as parens patrie to bring an action against the Federal Government." Wyoming v. Lujan, 969 F.2d 877, 883 (10th Cir. 1992) (internal quotation omitted).  But the Counties claim that their interest in this case is not confined to protecting the interests of their citizens.  Rather, the Counties allege that they have a separate proprietary interest in the outcome of this litigation.

The injury identified by the Counties, however, is confined solely to financial losses that they claim flow from the BLM's actions.  Specifically, the Counties allege that they "will be directly affected by suffering actual, concrete financial harm due to the alleged reduction of activity in the range-fed cattle industry on the National Monument." (Plfs.' Opp'n to the Fed. Defs.' Mot. to Dismiss (dkt. #23) 6.)  In the First Amended Complaint, the Counties allege that the denial of the grazing applications will cause "[t]he potential loss of the productive use of

more than 380,000 acres for domestic livestock grazing," and "will result in the reduction of activity in the range . . . thereby leaving a void in the economy of each County and contributing to a reduction in taxable income generated by each County."  (Am. Compl. (dkt. #3) ¶ 42 (emphasis added).)

In an attempt to justify their allegations of harm, the Counties submitted affidavits from D. Maloy Dobbs and Mark Habbeshaw, the county commissioners of Garfield County and Kane County respectively.  Those affidavits purport to detail the economic harm allegedly caused by the BLM's denial of the grazing rights applications.[1]  The affidavits do not disclose the methodology used in calculating the harm allegedly caused by the BLM's denial of the grazing rights applications.  But Mr. Dobbs and Mr. Habbeshaw assert that the BLM's action will reduce property values by approximately a three-quarters of a million dollars and will cost the Counties nearly $170,000.00 in annual sales revenue.  Mr. Dobbs and Mr. Habbeshaw further allege that the loss occasioned by the denial of the grazing permits will adversely affect the Counties' ability to meet its business and operating needs.

Putting to the side the fact the injury claimed by the Counties is couched in terms of potential harm and that the manner in which the Counties calculated the extent of their injury is nebulous at best, the injury claimed by the Counties is nevertheless insufficient to confer standing in a suit against the federal government.  The Eighth Circuit's decision in Block illustrates the point nicely.  In Block, the State of Iowa sought to force the Secretary of the

---

[1] The government filed a motion to strike the affidavits of Mr. Dobbs and Mr. Habbeshaw.  According to the government, the statements contained in the affidavits are inadmissible hearsay because those statements are based on a report prepared by an economics professor hired by the Counties.  The economic report itself is not in evidence and the government contends that Mr. Dobbs and Mr. Habbeshaw cannot insulate the report or its creator from cross-examination by simply adopting the report's conclusions and presenting those conclusions as accurate.  The court acknowledges the government's concern, but has no occasion to address it.  This is the case because even if the affidavits of Mr. Dobbs and Mr. Habbeshaw are considered, the Counties still do not meet standing requirements.

Department of Agriculture to implement disaster relief programs following a devastating drought. 771 F.3d at 348. The State of Iowa argued that it had standing in the case because the failure of the Secretary to implement the programs would cause agriculture to suffer, "forcing unemployment up and state tax revenues down." Id. at 353.

The Eighth Circuit concluded that the injuries claimed by the State of Iowa "were generalized grievances, shared by each citizen of Iowa" and the injuries "fail[ed] to constitute distinct, palpable injuries to the State as a state." Id. (internal quotation omitted). The Block court went on to note that the injury alleged by the State of Iowa was also distantly related to the alleged failure of the Secretary to implement the disaster relief programs. See id. at 354; see also Penn. v. Kleppe, 533 F.2d 668, 672 (D.C. Cir. 1976) ("[T]he unavoidable economic repercussions of virtually all federal policies, and the nature of the federal union as embodying a division of national and state powers, suggest to us that impairment of state tax revenues should not, in general, be recognized as sufficient injury in fact to support state standing.").

The Counties cite the Tenth Circuit's decision in Mount Evans in support of their position that harm caused to tax revenues can serve as an injury sufficient to allow a municipality to sue the federal government. As discussed, in Mount Evans, the Tenth Circuit held that a Colorado county had standing to challenge the decision of the United States Forest Service to not rebuild a facility that had been destroyed in a fire. See 14 F.3d at 1451-52. But the Tenth Circuit did not base its conclusion that the county had standing on the county's general allegation of damage to its tax base. Rather, the court concluded that the county suffered a sufficient injury in fact as a result of the Forest Service decision because the county had a guarantee that it would receive a certain percentage of all revenue taken in by the facility if it were rebuilt. See id. at 1453 ("[W]e find that the County has standing as a result of its alleged injury which resulted from its loss of

9

revenue sharing proceeds[.]  [W]e do not address the issue of whether it has standing as a result of its alleged injury from lost sales taxes . . . ."). The other cases upon which the Counties rely, like Mount Evans, involve more direct injuries than that alleged in this case. See, e.g., Carter v. Berger, 777 F.2d 1173, 1176 (7th Cir. 1985) (municipality had standing to recover property tax monies that were fraudulently withheld due to a RICO bribery scandal); Colo. River Indian Tribes v. Town of Parker, 776 F.2d 846, 848-49 (9th Cir. 1985) (town had standing to seek an injunction preventing an Indian tribe from regulating alcohol within the town limits--the town cited decreased sales tax revenue and inability to regulate liquor within its borders as injuries).

Because the Counties are unable to establish that they have suffered a redressable injury in fact that is fairly traceable to the denial of the grazing rights applications, they lack standing in this case. Accordingly, the Counties are dismissed as plaintiffs from all causes of action challenging the BLM's denial of grazing rights applications.

B.  *Mr. Alleman and the Browns*

The government moved to dismiss Mr. Alleman and the Browns as plaintiffs on the ground that Mr. Alleman and the Browns failed to allege that they were harmed by a final agency decision. Although the BLM had not taken any action on the applications of Mr. Alleman and the Browns at the time the ALJ reviewed the BLM's decision to deny the applications of Mr. Stewart, Mr. LeFevre, and Mr. Phillips, the BLM has since denied the applications of Mr. Alleman and the Browns. At the hearing on this matter, the government conceded that Mr. Alleman and the Browns could properly be considered plaintiffs if the Plaintiffs' complaint is amended to include the necessary allegations of harm. Accordingly, the court grants the government's motion to dismiss Mr. Alleman and the Browns as plaintiffs, but grants Plaintiffs leave to amend their complaint to add the necessary allegations of injury.

**II. Motion to Sever**

As part of its motion to dismiss certain plaintiffs for lack of standing, the government also requested that the Counties' causes of action under the FOIA be severed from the claims that arise under the APA. The Plaintiffs echoed the sentiment of the government that severance of the FOIA claims is advisable. Based on the stipulation of the parties and for the reasons set forth in the government's memorandum in support of its motion to sever, the FOIA claims are severed and the court will treat those claims separately from the claims challenging the denial of the applications for grazing rights. The court grants the Defendants twenty days from the date this order is issued to answer the Plaintiffs' complaint.

## Conclusion

Because the Counties have failed to allege a redressable injury in fact that can be fairly traced to the BLM's denial of the grazing rights applications, the Counties lack standing to challenge the denial of those applications and are dismissed as plaintiffs in relation to those claims. Also, Mr. Alleman and the Browns have failed to sufficiently allege that they have been injured by a final agency action, and therefore they currently lack standing. The court dismisses Mr. Alleman and the Browns but grants Plaintiffs leave to amend their complaint to include the necessary allegations of injury. Finally, the court severs the causes of action arising under the FOIA from those causes of action challenging the BLM's denial of the grazing rights applications and will treat those claims separately. Defendants have twenty days from the issuance of this order to respond to all of Plaintiffs' allegations.

For the foregoing reasons, The Federal Defendants' Motion to Dismiss the Counties, the Browns, and Alleman As To Causes of Action 1-4 (dkt. #8) and Federal Defendants' Motion to Sever Causes of Action 1-4 From Causes of Action 5-7 (dkt. #10) are GRANTED. The Federal

Defendants' Motion to Strike Affidavits of D. Maloy Dodds and Mark Habbeshaw (dkt. #26) is DENIED as moot.

SO ORDERED this 29th day of September, 2006.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge