IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TREVOR D. STEWART, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>DIRK KEMPTHORNE, Secretary of the United States Department of the Interior, et al.,<br><br>    Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:06-CV-209 TC |

In this appeal of an administrative law judge's formal adjudication denying grazing permit applications, the individual plaintiffs (Plaintiffs) have filed a motion to supplement the administrative record. Specifically, in contravention of the general rule, they seek to supplement the record with five briefing papers prepared by then-Manager of the Grand Staircase-Escalante National Monument, David Hunsaker.

Plaintiffs have failed to meet the high standard imposed on those seeking to supplement a record developed during an administrative trial. First, because the briefing papers pre-date the administrative trial where the record was developed, the papers do not fit within the extremely limited exception that allows supplementation by evidence coming into existence after the agency acted. Second, the papers are cumulative of evidence already in the record. Accordingly, the Plaintiffs' motion to supplement the administrative record is DENIED.

## BACKGROUND

The Plaintiffs brought this suit to challenge a September 2003 decision by David Hunsaker, the then-acting Manager of the Grand Staircase-Escalante National Monument, denying their grazing permit applications. They appealed the decision within the Bureau of Land Management (BLM), and the decision was affirmed by an administrative law judge (ALJ) after an administrative trial. The trial was held in two phases, during the period of May 9-11, 2005, and the period of September 8-9, 2005. The ALJ issued his decision on January 26, 2006.

The briefing papers the Plaintiffs seek to add to the record are: (1) January 18, 2002 Briefing by David Hunsaker for the BLM Assistant Secretary; (2) February 22, 2002 Briefing by David Hunsaker for the BLM Assistant Secretary; (3) February 28, 2002 Briefing by David Hunsaker for the BLM Assistant Secretary; (4) May 2, 2002 Briefing by David Hunsaker; and (5) May 2, 2002 Briefing by David Hunsaker (different version). The Plaintiffs received the briefing papers on November 17, 2006, when the BLM disclosed them in response to a January 2005 Freedom of Information Act (FOIA) request.

Plaintiffs focus on particular language in the briefing papers that they contend contradicts the trial testimony of Mr. Hunsaker and that supports their factual and legal position in the grazing permit matter. They note that, in all of the papers, Mr. Hunsaker says "[t]he permit for the West Clark Bench allotment has been relinquished to [BLM]." To understand the alleged significance of that language, it is necessary to provide background on one of the issues presented to the ALJ.

When the Plaintiffs applied for their grazing permits, the BLM denied their applications on the basis that another permittee with a grazing preference held the permit for the then-

available AUMs (Animal Unit Months) on, for instance, the Clark Bench Allotment. The permittee was Canyonlands Grazing Corporation (Canyonlands). Canyonlands is involved in a movement to retire certain public grazing lands, and, at the time, was working with the BLM to relinquish its grazing permits to that end. Plaintiffs, who raise livestock, are opposed to such a plan. They contend that if Canyonlands had relinquished its permit at the time the Plaintiffs submitted their permit applications, the ALJ's decision to deny their applications was invalid. One of the issues the ALJ addressed and resolved in his January 26, 2006 Decision was permit relinquishment (that is, whether "the grazing privileges for [the allotments at issue] were irrevocably relinquished by Canyonlands and that, in turn, BLM illegally retained Canyonlands as a permittee on those allotments."). (Administrative Record (AR) at 4080.) The Plaintiffs, in their appeal, "contend[ed] that the competing, file-over applications of the [Plaintiffs] should have been approved, thereby displacing Canyonlands as the permittee. [Plaintiffs] argue[d] that Canyonlands' grazing privileges automatically terminated when they submitted their relinquishments to BLM."  (Id.)

Here, the Plaintiffs point to the briefing papers as evidence that Canyonlands had irrevocably relinquished its permit for the Clark Bench Allotment at the time Plaintiffs filed their own applications, contrary to Mr. Hunsaker's trial testimony (during which he testified that the relinquishments were more akin to offers and were conditional).

## ANALYSIS

Generally, supplementation of the administrative record by the district court is not appropriate, especially when proceedings are trial-like. The Secretary of the Interior, through regulation, mandates that grazing permit decisions are governed by formal adjudication

3

procedures similar to those required under 5 U.S.C. § 554 (setting forth requirements for formal adjudication). See 43 C.F.R. §§ 4.474-4.479; § 4.480 (setting forth procedures relating to grazing appeals, and stating that "transcript of testimony and exhibits, together with all papers and requests filed in the proceedings, shall constitute the exclusive record for decision"). See also 5 U.S.C. § 556(e) (in administrative trial proceeding, "[t]he transcript of testimony and exhibits, together with all the papers and requests filed in the proceeding, constitute the exclusive record for decision . . . .") (emphasis added). The formal record is what the BLM supplied to the court.

Plaintiffs cite to five "extremely limited"[1] exceptions to the general rule against supplementation, at least in the informal adjudication or rulemaking context. A court may supplement the record when it appears:

> (1) that the agency action is not adequately explained and cannot be reviewed properly without considering the cited materials; (2) that the record is deficient because the agency ignored relevant factors it should have considered in making its decision; (3) that the agency considered factors that were left out of the formal record; (4) that the case is so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues; and <u>(5) that evidence coming into existence after the agency acted demonstrates that the actions were right or wrong.</u>

<u>American Mining Congress v. Thomas</u>, 772 F.2d 617, 626 (10th Cir. 1985) (internal citations omitted) (emphasis added). The Plaintiffs, relying on exception number five, assert that the briefing papers are "evidence coming into existence after the agency acted," not because the papers post-date the ALJ's 2006 decision (they do not),[2] but because the Plaintiffs did not

---

[1] <u>American Mining Congress v. Thomas</u>, 772 F.2d 617, 626 (10th Cir. 1985).

[2] Nor do they post-date Mr. Hunsaker's 2003 decision.

become aware of the papers until BLM disclosed them on November 17, 2006 (in response to a 2005 FOIA request).

Despite Plaintiffs' reliance on the exceptions listed in American Mining Congress, it is not clear that these exceptions apply to formal adjudications, which are most analogous to trials in district court. Supplementation of a record[3] developed during a trial before an ALJ would be as improper as supplementing the record on appeal from a district court decision. The proper remedy, if necessary, seems to be to remand (assuming the evidence would have an impact on the outcome) rather than taking evidence in this appellate forum. But the court need not go that far, because the Plaintiffs' arguments, regardless of the context, fail.

First, even accepting, for argument's sake, that the exceptions are the proper standard for an appeal of an administrative trial outcome, the court finds that the Plaintiffs are misapplying the exception, which allows supplementation when evidence actually comes into existence after the decision (and if the evidence demonstrates the agency decision was wrong). See, e.g., Murakami v. United States, 46 Fed. Cl. 731, 736-37 (Fed. Cl. 2000) (analyzing fifth exception, court noted that evidence must not have been "available" before or during the administrative proceedings). "The few published decisions that apply this [fifth] exception appear to involve situations in which evidence was produced to show the projections or predictions upon which an

---

[3]The court disagrees with the Plaintiffs' alternative contention that the administrative record consists of documents "directly or indirectly" considered by the decisionmaker. They cite to Bar MK Ranches v. Yuetter, 994 F.2d 735, 739 (10th Cir. 1993), but Bar MK is distinguishable. The Tenth Circuit was defining an administrative record in the context of an agency decision not governed by the formal administrative trial procedures that apply to grazing permit decisions. Accordingly, their argument—that the briefing papers (drafted by Mr. Hunsaker) were necessarily "indirectly" considered by the decisionmaker (Mr. Hunsaker) and so should have been included in the administrative record filed with the court—is inapposite.

agency action was based either proved accurate or inaccurate." Id. at 736 n.6 (citations omitted). The briefing papers clearly pre-date the agency decision and were available. The Plaintiffs' attempt to characterize the disclosed material as documentation that came into existence after the agency's decision is simply not persuasive.

Second, the court agrees with the government's contention that the briefing papers are cumulative of evidence already before the agency at the time the decision was made. As noted above, the primary language at issue is the statement in all five briefing papers that "[t]he permit for the West Clark Bench allotment has been relinquished to [BLM]." This statement is found in the administrative record.

For instance, three appellant exhibits titled "Timeline of Events" for the Clark Bench Allotment, the Willow Gulch Allotment, and the Last Chance Allotment (see AR 3338-3340, Exs. 133-135) all note that permits were relinquished to the BLM in 2000-2001 (before the crucial dates when the Plaintiffs filed their grazing permit applications).[4] They further note that Canyonlands withdrew its relinquishment of permits on April 15, 2002, thereby implying that there were relinquishments at the time Mr. Hunsaker drafted the first three briefing papers.

Other examples of cumulative evidence include the following excerpts from the administrative record:

---

[4]For example, on January 22, 2002, Plaintiff Trevor D. Stewart filed an application for a permit to graze livestock in the Clark Bench Allotment. (Ex. 18, AR 2318).

| | | |
|---|---|---|
| June 29, 2000 | Brent Robinson Request to Relinquish Grazing Privileges | "I hereby request relinquishment to the [BLM] of all my grazing privileges in the Clark Bench Allotment . . . ." (AR 2309.)[5] |
| November 2001 | BLM Environmental Assessment | "The purpose of the Proposed Action is to determine how 1,200 active grazing AUM's on the Clark Bench Allotment, voluntarily relinquished to the BLM, should be allocated. (AR at 2275.) |
| November 30, 2001 | BLM Notice of Intent to Amend Plan for the Grand Staircase-Escalante National Monuments, et al. | "The livestock grazing permittee has voluntarily relinquished all of the existing grazing privileges on the Clark Bench allotment." (AR 2269.) |
| December 3, 2001 | BLM Letter to "Interested Public" | "This EA amending the Grand Staircase-Escalante National Monument Plan and the Paria Management Framework Plan will determine how grazing AUMs on the Clark Bench Allotment, voluntarily relinquished to the BLM, should be allocated." (AR 2311.) |
| December 27, 2001 | BLM Notice of Intent to Amend Plans; Corrections | "These plan amendments/EAs are initiated in response to the voluntary relinquishment of the sole grazing preference/permit for the Clark Bench grazing allotment . . . ." (AR 2316.) |
| January 15, 2002 | Letter from Canyonlands to BLM | "Canyonlands Grazing Corporation hereby relinquishes to the [BLM] the [specifically listed] grazing privileges . . . on the Last Chance allotment . . . ." (AR 2317.) |

[continued on next page]

---

[5]Mr. Robinson also testified that when he filed the request to relinquish his grazing privileges in June 2000, "he considered his relinquishment to be effective when he signed it, because he had already been paid by Grand Canyon Trust." (ALJ Order at 15, AR 4072.)

| | | |
|---|---|---|
| February 2002 | BLM Environmental Assessment | "This plan amendment/EA is initiated in response to the voluntary relinquishment of the sole grazing preference/permit for the Clark Bench Allotment." (AR 2470.) |

In addition to the above citations to the administrative record, the ALJ's decision demonstrates that the ALJ was aware of the issue and resolved it based on evidence similar to (or at least cumulative of) the briefing papers. Indeed, the ALJ acknowledged the issue raised by the Plaintiffs, noting that they contended during the appeal "that Canyonlands unconditionally relinquished its grazing privileges" and that "Canyonlands' grazing privileges automatically terminated when they submitted their relinquishments to BLM." (ALJ Order at 22-23, AR 4079-4080.)

But, ultimately, the ALJ concluded that,

With respect to Appellants' contentions that Canyonlands had effectively relinquished its grazing permits, the testimony of Mr. Hunsaker <u>and Mr. Lichthardt</u> proved that, pending the land use plan amendment process, Canyonlands' proffers on this subject were <u>properly construed by BLM to be "offers" to relinquish</u> that would become final only upon completion of the concomitant BLM planning process. Mr. Hunsaker's testimony also proved that <u>BLM never actually accepted the proffered relinquishments, because the relinquishment offers were withdrawn by Canyonlands</u> before the BLM plan amendments were completed. This interpretation is also supported by the content of the referenced Myers' Solicitor Opinion.

(<u>Id.</u> at 23, AR 4080 (emphasis added).) The ALJ further stated that,

<u>In my opinion, a voluntary relinquishment of grazing privileges may be procedurally rescinded anytime before it is formally accepted by appropriate BLM supervisory authorities.</u> In this case, the conditions precedent that Canyonlands had clearly specified as reciprocal to its relinquishment offers, namely the retirement of grazing, were <u>never officially implemented or promulgated by BLM</u>. <u>BLM never issued any final decisions</u> serving to retire grazing on any of the three allotments on appeal herein. Relatedly, on October 4, 2002, Mr. Myers issued his Solicitor M-Opinion which states that BLM is not required to have unconditional

offers of relinquishment as predicates to considering land use plan amendments. (Id. at 24, AR 4081 (emphasis added).)  Finally, the ALJ cited to testimony from BLM employee Robert Stager (whom the ALJ qualified as an expert witness on permit administration), who said "that when BLM receives a relinquishment, there is no specific regulatory provision that would preclude BLM from <u>holding that relinquishment in abeyance</u> without necessarily offering the permit immediately to other permit applicants."  (ALJ Order at 13, AR 4070 (emphasis added).)  The ALJ's legal conclusion—that BLM has the discretion to treat relinquishments as conditional (see ALJ Order at 25, AR 4082)—reduced any significance the statements in the briefing papers would have had during trial.

Given the cumulative nature of the briefing papers (particularly the language regarding relinquishment of the permit on the Clark Bench Allotment), an order from this court adding them to the record would not change the ALJ's decision.  The ALJ's Order demonstrates that the parties litigated the issue of irrevocable relinquishment and the ALJ accepted the BLM's legal position.

**ORDER**

For the foregoing reasons, the Plaintiffs' Motion to Supplement the Administrative Record (docket # 56) is DENIED.

DATED this 1st day of June, 2007.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
Chief Judge