**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 2, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

TREVOR D. STEWART; TODD
PHILLIPS; JOE PHILLIPS; H. DELL
LEFEVRE, individually and in his
capacity as member of the Board of
County Commissioners of Garfield
County; WORTH W. BROWN;
JAMES N. BROWN; WILLIAM F.
ALLEMAN; RAY SPENCER, in his
official capacity as member of the
Board of County Commissioners of
Kane County; MARK HABBESHAW,
in his official capacity as member of
the Board of County Commissioners of
Kane County; DANIEL HULET, in his
official capacity as member of the
Board of County Commissioners of
Kane County; D. MALOY DODDS,
in his official capacity as member of
the Board of County Commissioners of
Garfield County; CLARE RAMSAY,
in her official capacity as member of
the Board of County Commissioners of
Garfield County,

      Plaintiffs - Appellees,

and

BOARD OF COUNTY
COMMISSIONERS OF GARFIELD
COUNTY, UTAH; BOARD OF
COUNTY COMMISSIONERS OF
KANE COUNTY, UTAH

Nos. 07-4200 and 07-4203

Plaintiffs - Appellees - Cross-Appellants.

v.

UNITED STATES DEPARTMENT OF THE INTERIOR; THE BUREAU OF LAND MANAGEMENT, an agency of the Department of the Interior of the United States; DIRK KEMPTHORNE, in his capacity as Secretary of the United States of Department of the Interior; DAVID WOLFE, Acting Manager, Grand Staircase Escalante National Monument,

Defendants - Appellants - Cross-Appellees,

and

CANYONLANDS GRAZING CORPORATION; GRAND CANYON TRUST,

Defendants - Intervenors,

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH (D.C. No. 06-CV-00209-TC)**

---

Brandon L. Jensen (Karen Budd-Falen of Budd-Falen Law Offices, L.L.C., on the briefs), Cheyenne, Wyoming, for Plaintiffs - Appellees - Cross-Appellants.

Mark W. Pennak (Jeffrey S. Bucholtz, Acting Assistant Attorney General, Brett L. Tolman, United States Attorney, Leonard Schaitman, Wendy M. Keats,

Appellate Staff, Civil Division, Department of Justice, on the briefs),
Washington, D.C., for Defendants - Appellants - Cross-Appellees.

————————————

Before **HENRY**, Chief Judge, **KELLY**, and **MURPHY**, Circuit Judges.

————————————

**KELLY**, Circuit Judge.

————————————

Plaintiffs - Appellees - Cross-Appellants Kane and Garfield Counties (the Counties) sought access to records of the Bureau of Land Management (BLM) and the United States Department of the Interior concerning the granting and retiring of grazing permits in the Grand Staircase-Escalante National Monument (National Monument) in southern Utah, pursuant to a Freedom of Information Act (FOIA), 5 U.S.C. § 552, request.  After the agencies did not produce certain records, the counties petitioned the district court to order production of all requested documents.  The district court disposed of all FOIA issues, granting partial summary judgment for the Counties and partial summary judgment for the government.  Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm in part and reverse in part.

<u>Background</u>

A.  <u>FOIA</u>

FOIA generally requires federal agencies to disclose agency records to the

public upon request, subject to nine exemptions that protect certain types of

documents from disclosure.  Relevant to this appeal is Exemption 5, which

exempts "inter-agency or intra-agency memorandums or letters which would not

be available by law to a party other than the agency in litigation with the agency."

5 U.S.C. § 552(b)(5).  To qualify under this exemption, a document must be the

product of a government agency, and must "fall within the ambit of a privilege

against discovery under judicial standards that would govern litigation against the

agency that holds it."  Dep't of the Interior v. Klamath Water Users Protective

Ass'n, 532 U.S. 1, 8 (2001).  The Supreme Court recognizes the attorney work-

product and the deliberative process privileges as falling under the ambit of this

exemption.  Id.  Attorney work-product covers information reflecting the mental

processes of counsel, while the deliberative-process privilege protects documents,

such as advisory opinions, recommendations, and deliberations, that reflect how

government decisions are made.  Id.  The deliberative process privilege may

include materials generated by agency employees as well as consultants.  Id. at

10-12.

    B.  Factual Background

    Kane and Garfield Counties, two Utah counties, submitted several FOIA

requests to the Grand Staircase-Escalante National Monument office of the BLM,

seeking information regarding the management of several allotments within the

National Monument and the grant of several grazing permits to the Grand Canyon

Trust and Canyonlands Grazing Corporation (collectively Canyonlands).  Aplee.-
Cross-Aplt. Br. 3-4; Aplee. Supp. App. 140-41, 143-48, 153-57.  The agencies
provided several records, and reportedly some e-mails or access to e-mails, to the
Counties pursuant to their FOIA requests.   The government did not, however,
produce all of the requested records.  The government did not produce records
containing backup e-mails on 600 computer tapes maintained at the BLM's Utah
State Office, and also declined to grant a fee waiver for the costs associated with
such a venture.  See Bd. of County Comm'rs of Kane County v. Dep't of the
Interior, No. 2:06-CV-209, 2007 WL 2156613, at *3 (D. Utah July 26, 2007).  It
also did not produce certain documents created by Karl Hess, a paid consultant
for the Department of the Interior.  See id. at *11.  The denial of the fee waiver
and the nondisclosure of the Hess records are at issue in this appeal.

1. E-mail Communication on Backup Tapes

Included in the Counties' FOIA requests was a request for all e-mail
communications sent or received from employees at the National Monument
pertaining to Canyonlands from June 1, 1999, to March 11, 2003 (the date of the
FOIA request).  Aplee. Supp. App. 140-41.  David Hunsaker, manager of the
National Monument, responded to the FOIA request, noting that records were
available for the e-mail communications on staff computers at that time and that
any printed copies of e-mails were available in staff files.  However, Mr.
Hunsaker indicated that older e-mail records, which were included in the

Counties' request, are not maintained by the National Monument staff but are instead held on backup tapes housed at the Utah State Office of the BLM.  Aplee. Supp. App. 142.

The Counties then requested those backup-tape e-mail records.  Aplee. Supp. App. 122-23.  The Utah State Office responded to the Counties, seeking clarification of the request and noting that production of the requested records would be "extremely time consuming and cost prohibitive" given the more than 600 backup tapes.  Aplee. Supp. App. 124-25.  The Utah State Office further noted that the estimated cost of complying with the request based upon 72 employees would be in excess of $800,000.  Aplee. Supp. App. 124.  The Utah State Office later revised that estimate due to clarification from the Counties, concluding that production of the materials on the backup tapes would be $280,430.70 based upon 17 employees, and noting that it would not begin processing the request without a fee waiver from the Counties.  Aplee. Supp. App. 126.  On October 14, 2003, the Counties requested a waiver of fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).  Aplee. Supp. App. 127-34; see 43 C.F.R. §§ 2.19, 2.20.  On November 6, 2003, the Utah State Office denied the request on the grounds that copies of some of the e-mails had been previously provided and that any remaining e-mails on the backup tapes would not make a significant contribution to public understanding of government operations as required for a fee waiver under the statute.  Aplee. Supp. App. 119-21.  The Counties then

appealed the denial of the fee waiver to the Department of the Interior's FOIA appeals office. Aplee. Supp. App. 112-18. That office, however, did not resolve the appeal and advised the Counties of their right to seek judicial review of the matter. See Bd. of County Comm'rs of Kane County, 2007 WL 2156613, at *4.

### 2. Karl Hess Reports

The Counties' final FOIA request was sent to the Office of the Secretary of the Interior on March 9, 2005. Aplt. App. 227-30. Like the previous requests, this one sought documents and other records relating to livestock grazing permits administered by the BLM on the National Monument, and the retirement of grazing on those allotments. Aplt. App. 227-30. After conducting two searches, the Office of the Secretary of the Interior released several documents but withheld others pursuant to FOIA Exemptions 5 and 6. Aplt. App. 231-36; see Bd. of County Comm'rs of Kane County, 2007 WL 2156613, at *5; Aplt.-Cross-Aplee. Br. 7; see also 5 U.S.C. § 552(b)(5)-(6). Included in the withheld documents were three documents authored by Karl Hess, a consultant hired by the Department of the Interior to assess policy alternatives concerning grazing and voluntary retirement of grazing permits in the National Monument. See Bd. of County Comm'rs of Kane County, 2007 WL 2156613, at *11. The Counties then filed an administrative appeal, which was never resolved by the Department of the Interior, Aplt. App. 46, ¶ 120, and subsequently sought judicial review.

C.  <u>The District Court Memorandum Decision</u>

The Counties and the BLM filed cross-motions for summary judgment. The district court upheld the BLM's refusal to waive FOIA search fees under 5 U.S.C. § 552(a)(4)(A)(iii) for a search of the e-mail backup tapes housed at the Utah State Office, reasoning that the production of these additional documents likely would not contribute to the public's understanding and that the request was unduly burdensome.  <u>Bd. of County Comm'rs of Kane County</u>, 2007 WL 2156613, at *7.  The district court also upheld the BLM's decision to withhold various inter-agency documents pursuant to Exemption 5.  However, the district court held that the BLM erred in withholding two documents authored by Mr. Hess (and incorporated a prior court order that held that the third document authored by Mr. Hess was improperly withheld), finding that the documents fell outside the scope of Exemption 5.  <u>Id.</u> at *10-12 & n.6.  The district court recognized that the views of a governmental consultant can be deemed "intra-agency" under Exemption 5, but held that the exemption was not available where "the consultant is 'communicating with the Government in [his] own interest or on behalf of any person or group whose interests might be affected by the Government action addressed by the consultant.'"  <u>Id.</u> at *11 (quoting <u>Klamath Water Users</u>, 532 U.S. at 12).  The district court acknowledged that Mr. Hess lacked any interest in competing for a grazing permit or representing any party who was interested in doing so, but concluded that he was not a disinterested

expert and therefore the intra-agency exemption was unavailable.  Id.  The district

court relied upon Mr. Hess's past scholarship and advocacy on the topic of

grazing reform as disqualifying his reports for the exemption.  Id.

Defendants now appeal, claiming that Mr. Hess's documents fell well

within Exemption 5, and that the district court's ruling was an improper

expansion of the reasoning in Klamath.  Aplt.-Cross-Aplee. Br. 14.  The Counties

cross-appeal, claiming that the district court erred in denying their request for a

fee waiver regarding the e-mail communications stored by the Utah State Office.

Aplee.-Cross-Aplt. Br. 8-9.


Discussion

We review a district court's summary judgment decision de novo and apply

the same legal standards as the district court.  Forest Guardians v. U.S. Dep't of

the Interior, 416 F.3d 1173, 1177 (10th Cir. 2005).

A.  The Counties' Fee Waiver Request

We review a FOIA fee waiver decision de novo, and limit our review to the

record before the agency.  Id.; 5 U.S.C. § 552(a)(4)(A)(vii).  The record contains

"the initial FOIA request, the agency's response, and any subsequent materials

related to the administrative appeal."  Forest Guardians, 416 F.3d at 1177.  A

requester of a FOIA fee waiver has the burden of demonstrating that the statutory

conditions are met.  Id.  Thus, a requester must demonstrate that "'disclosure of

the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.'" Id. (quoting 5 U.S.C. § 552(a)(4)(A)(iii)). A fee waiver request is different than a records request, and should be evaluated independently. Id. at 1180 n.9.

The Department of the Interior has established several criteria that must be met for a requester to obtain a fee waiver. 43 C.F.R. pt. 2 app. D; see 5 U.S.C. § 552 (a)(4)(A)(iii). Entitlement to a fee waiver requires a showing that (1) the information is in the public interest because it "is likely to contribute significantly to public understanding of the operations and activities of the Government," and (2) the request is not "primarily in [the requestor's] commercial interest." 43 C.F.R. pt. 2 app. D(a). In determining whether to grant a fee waiver, the BLM considers (1) how the records concern the operations or activities of the government, (2) how the records contribute to the public understanding of government operations and activities, (3) whether release of the documents will contribute significantly to the public understanding (i.e., whether the information requested is new), and (4) whether disclosure is in the requester's commercial interest. 43 C.F.R. pt. 2 app. D(b).

The Counties argue that the district court improperly upheld the BLM's denial of their fee waiver request for two reasons. First, they argue that the district court improperly found that the information sought by the Counties from

the backup tapes had already been provided to the Counties.  Aplee.-Cross-Aplt.

Br. 8-9, 16.  Second, the Counties argue that, because the Utah State Office did

not rely on the "unduly burdensome" justification as a basis for denying the fee

waiver, the district court improperly relied upon this justification.  Aplee.-Cross-

Aplt. Br. 8-9, 24-25.  The Counties further argue that such a justification should

be unavailable because "agency records must be maintained in such a manner as

to be readily reproducible."  Aplee.-Cross-Aplt. Br. 25.

 Prior to the fee waiver denial, the Counties filed several FOIA requests

with the BLM.  The BLM ultimately responded.  See Aplee.-Cross-Aplt. Br. 3-6;

Aplt.-Cross-Aplee. Br. 4-5.  The Counties complain that, at the time of the fee

waiver denial, the BLM had not yet responded appropriately to their requests and

that those responses did not adequately set out what was provided.  They argue

that the BLM itself made a distinction between what it had previously provided

and "remaining e-mails," suggesting that older e-mails related to their inquiry do

in fact exist.  See Aplee. Supp. App. 120-21.  According to the Counties, the

BLM granted fee waiver requests with respect to the former, but not the latter,

and for no apparent reason.

 These arguments are unavailing.  The record suggests that the BLM did

provide *some* responsive information without challenge, Aplee. Supp. App. 158,

and that the National Monument office was willing to provide "these records for

e-mail currently residing on staff computers or any printed copies of e-mail that

may be in our files," Aplee. Supp. App. 142.  The National Monument office
then directed the Counties to the Utah State Office for the potential recovery of
older e-mail records not maintained on site.  Aplee. Supp. App. 142.  The fee
waiver denial indicates that "[c]opies of some of the e-mails responsive to your
request have previously been printed and are included with the documents you
have requested from the [National Monument]."  Aplee. Supp. App. 120.  While it
is true that the fee waiver denial speaks of "remaining e-mails," that does not
mean that relevant e-mails that would meet the fee waiver standard exist—without
performing the search of the backup tapes, it is impossible to know whether such
records exist.

       We know of no requirement that requires the BLM in denying a fee
waiver request to catalogue the e-mails already produced.  To the extent that the
BLM did not provide those e-mails in a manner acceptable to the Counties—and
there seems to be some difference of opinion on that point, see Aplee.-Cross-Aplt.
Reply Br. 3—the Counties apparently do not challenge this lack of production on
appeal, and we see no reason why the district court could not rely upon the
statements in the record suggesting that some e-mails had been produced or
access to the e-mails had been granted.  Finally, there is an obvious and critical
difference between granting a fee waiver with respect to printed records (or those
available on existing databases) and denying one regarding a request to search
610 backup tapes with no indication that such records may exist.

The BLM is required to print and store hard copies of all documents that meet the definition of a "record," including e-mails.  Memorandum from the Department's Chief Information Officer (Sept. 10, 1999) (http://www.doi.gov/ocio/records/news/emailguidrev2.htm) [hereinafter CIO Memo].  We assume that the BLM complied with all procedures required of it in its maintenance of records.  See Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1238-40 (Fed. Cir. 2002) (good faith).  The Counties argue that this policy raises troubling issues because employees "can delete electronic records from their computers as long as they have filed a paper copy of the records in their official recordkeeping system."  CIO Memo (emphasis omitted).  According to the Counties, this suggests that employees can elect not to print records, opting instead merely to rely upon a backup system.  This strained interpretation is belied by the balance of the memo, which clearly requires employees to manage their e-mail and print out records.

With respect to the burden the Counties' request entails, the government argues that we may look to the affidavit of a BLM employee, Stewart Nelson, regarding the technical aspects and costs involved in searching backup e-mails.  Aplt.-Cross-Aplee. Reply Br. 27-29.  The government claims that the affidavit merely explains why the search would be time consuming and cost prohibitive as claimed by the agency.  The affidavit certainly supports the district court's conclusion that the costs and resources required were exorbitant in relation to the

- 13 -

speculative nature of the whole endeavor. Regardless, the district court declined to rely upon the affidavit because the Counties objected and it was not part of the agency record. The affidavit was not contained in the administrative record or the agency's denial, and therefore we decline to rely upon it here. See Forest Guardians, 416 F.3d at 1177.

That said, the district court was correct in upholding the denial of the fee waiver because the underlying search would be unduly burdensome given the speculative nature of the records requested. Although the Counties argue that the BLM did not rely upon this ground, only the most myopic reading of the record yields that conclusion: the BLM initially stated that "[s]earching backup e-mail tapes is extremely time consuming and cost prohibitive," Aplee. Supp. App. 137, then provided a revised cost estimate of $280,430.70 for such a search of more than 600 backup tapes, Aplee. Supp. App. 126. We have no doubt that the Counties were on notice that the agency was claiming an undue burden from the outset. The argument that the BLM should be responsible for the fees because it did not maintain its records in readily reproducible form ignores the fact that the backup tapes simply are not the official means by which the BLM complies with FOIA requirements, see CIO Memo, and that searches for electronic records are not required when they would significantly interfere with an agency's automated information system, see 5 U.S.C. § 552(a)(3)(C); 43 C.F.R. § 2.21(a). As the Counties explain, the data on backup tapes is not organized for retrieval of

individual documents or files, but rather for purposes of disaster recovery.
Aplee.-Cross-Aplt. Br. 29-30.

In its opinion, the district court found that the BLM, through its prior
disclosures to the Counties, likely produced all the relevant e-mail
communications, and thus any records maintained on the backup tapes would not
"contribute significantly to public understanding." Bd. of County Comm'rs of
Kane County, 2007 WL 2156613, at *7, *9 (citing 43 C.F.R. pt. 2 app. D(b)(3)).
Further, the district court found that the fee waiver request was based upon mere
"speculation that a search through the backup tapes by the BLM would yield new
material that is meaningfully informative." Id. at *9.

Even with liberal construction of the fee waiver provision for non-
commercial requestors, plaintiffs must still satisfy the statutory standard that the
disclosure contributes to the public's understanding of the operations and
activities of the BLM on this issue. See Forest Guardians, 416 F.3d at 1177-78.
The Counties have not demonstrated that the backup tapes might reveal additional
or different information than that provided or promised by the BLM. Thus, we
cannot determine how such information would "contribute significantly to public
understanding," and the fee waiver request was properly denied. The Counties
can still proceed, but they must pay for the search of the more than 600 backup
tapes.

B.  Documents Authored by Mr. Hess

The government claims that the Hess documents were properly withheld under Exemption 5 of FOIA.  We review de novo an agency's decision not to disclose records pursuant to a FOIA request.  See 5 U.S.C. § 552(a)(4)(B); Anderson v. Dep't of Health and Human Servs., 907 F.2d 936, 941 (10th Cir. 1990).  When reviewing whether documents were properly withheld pursuant to an exemption, we note that "exemptions are to be narrowly circumscribed." Trentadue v. Integrity Comm., 501 F.3d 1215, 1226 (10th Cir. 2007). Furthermore, "the federal agency resisting disclosure bears the burden of justifying withholding."  Id. (citing Alirez v. NLRB, 676 F.2d 423, 425 (10th Cir. 1982)).

The district court held that the Hess documents fell outside the scope of Exemption 5.  Bd. of County Comm'rs of Kane County, 2007 WL 2156613, at *11-12 & n.6 (referring to Vaughn index documents 14, 16, and 20).  The district court relied on Klamath Water Users which dealt with the question of whether tribal communications with the Department of the Interior fall under Exemption 5 as intra-agency communications and thus are not subject to FOIA disclosure requirements.  See Klamath Water Users, 532 U.S. at 11-16.  In Klamath, after recognizing that Exemption 5 extends to government agency communications with paid consultants, the Court declined to analogize tribal communications to consultant communications.  Id. at 11-12.  It did so because, while consultants

may be similar to agency personnel, "the Tribes are self-advocates at the expense of others seeking benefits inadequate to satisfy everyone." Id. at 12.  The Court then made it clear that the Tribes were water claimants in competition with non-tribal claimants for a finite supply of water.  Id. at 13.

The district court considered Mr. Hess analogous to a non-governmental consultant, notwithstanding that he was not competing for a grazing permit or representing anyone who was.[1]  According to the district court, Mr. Hess's scholarly work in the field and his advocacy for a market-based approach to this issue indicate that he has "deep-seated views," and thus is not a disinterested expert.  Bd. of County Comm'rs of Kane County, 2007 WL 2156613, at *11.  However, the record clearly establishes that Mr. Hess was a paid consultant (contractor) to the government.  See App. 210-14 (Vaughn index noting that the withheld documents were created by a "contractor" at the request of the government); see also Bd. of County Comm'rs of Kane County, 2007 WL 2156613, at *11 (noting that Mr. Hess was a paid consultant hired by the BLM).  For purposes of this analysis, Mr. Hess functioned akin to an agency employee.  We find no support for a limitation on paid consultants that they must lack "deep-

---

[1] The Counties suggest that the Defendants never identified in what capacity Mr. Hess worked when he authored the three documents at issue.  Aplee. Cross-Aplt. Br. 38.  This argument, however, is waived because the Counties did not raise it in the district court.  See Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc., 413 F.3d 1163, 1167 (10th Cir. 2005)  Regardless, Mr. Hess is plainly identified as a contractor in the record.  App. 210-14.

seated views."  The fact that they may derive intellectual satisfaction from consulting and possible adoption of their views does not mean that they have a personal or economic stake in the outcome.  It would be unusual for an agency to seek out the advice of consultants who lack professional standing or who have not worked in the field, let alone those who have not published their views in their areas of expertise.  <u>See</u>, <u>e.g.</u>, <u>Nat'l Inst. of Military Justice v. United States Dep't of Defense</u>, 512 F.3d 677, 683 (D.C. Cir. 2008) (comments by non-governmental lawyers solicited by the Department of Defense for their experience and qualifications were "intra-agency"), <u>cert. denied</u>, 2008 WL 5204532 (Dec. 15, 2008).  The fact that some of those consultants may have strong and well-developed views on public policy does not disqualify their advice from being treated as confidential "intra-agency" communications under the deliberative process privilege.  A decision to the contrary would impinge on agency discretion to seek advice.  Therefore, Mr. Hess's reports to the BLM were properly withheld pursuant to Exemption 5, and the district court erred in concluding otherwise.

AFFIRMED in part, REVERSED in part.

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT
## OFFICE OF THE CLERK
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker
Clerk of Court

February 02, 2009

Douglas E. Cressler
Chief Deputy Clerk


Jared C. Bennett
Office of the United States Attorney
185 South State Street, Suite 300
Salt Lake City, UT 84111

Mr. Mark William Pennak
United States Department of Justice
Civil Division- Appellate Staff
950 Pennsylvania Ave., N.W.
Room 7326 MAIN
Washington, DC 20530


**RE:    07-4200 and 07-4203, Stewart, et al v. DOI, et al**
         Dist/Ag docket: 2:06-CV-209-TC

Dear Counsel:

Enclosed is a copy of the opinion of the court in the captioned case. Judgment was entered today.

Please contact this office if you have questions.

Sincerely,

*Elisabeth A. Shumaker*

Elisabeth A. Shumaker
Clerk of the Court


cc:    Karen Budd-Falen
       Brandon L. Jensen
       Lloyd D. Rickenbach

EAS/lab